UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------
MIGUEL VELASQUEZ

    -against-

                                  **COMPLAINT**

                                  **TRIAL BY JURY**
                                  **DEMANDED**

**THE CITY OF NEW YORK (CITY); THE NEW
YORK CITY POLICE DEPARTMENT (NYPD);
in his official capacity as then NEW YORK CITY
POLICE OFFICER SEAN JOHNSTONE**

                                  **CIV NO.**

                          **Defendants.**
-----------------------------------------------------

Plaintiff, **MIGUEL VELASQUEZ** by and through his attorney, Rudy Velez, Esq., respectfully shows to this Court and alleges, as follows:

## INTRODUCTION

1. This is a civil rights action in which the plaintiff, **MIGUEL VELASQUEZ** seeks relief for the defendants' violations of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. §1983 and the Fourth and fourteenth Amendments of the New York State Constitution and Constitution of the United States.

2. Plaintiff seeks money damages, attorney's fees and such further relief as this Court deems just and proper.

3. This action has commenced within three years after plaintiff's claim arose by reason of the termination of the criminal prosecution in favor of the plaintiff.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. §1983 and 1988, and the

Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the laws of the State of New York.

5. Jurisdiction is founded upon 28 U.S.C. §1331,1343 (1-4) and 2202.Venue is proper in this district pursuant to 28 U.S.C. §.1391b.

## JURY DEMAND

6. Plaintiff demands trial by jury in this action.

## PARTIES

7. Plaintiff **MIGUEL VELASQUEZ (VELASQUEZ)** is an American Citizen residing in Brooklyn, New York. He has not been convicted of any crime since his release from custody after serving his sentence.

8. Defendant **CITY OF NEW YORK (CITY)** is a municipal corporation organized under the laws of the State of New York and the public employer of the police officer named as a defendant in this action.

9. Defendant NEW YORK CITY POLICE DEPARTMENT (**NYPD**) is an agency of the City of New York, existing and operating by virtue of the laws of the State of New York and the City of New York.

10. At all times relevant herein, defendant POLICE OFFICER **SEAN JOHNSTONE (JOHNSTONE)** was a Police Officer of the **NYPD**, acting as an agent, servant and employee of defendant **CITY** and in furtherance of the scope of his employment and acting under color of the law; to wit under color of statues, ordinances, regulations, policies, customs and usages of the **CITY** and/or the Police Department.

11. At all times relevant herein, defendant **JOHNSTONE**, was a police officer employed by the **NYPD**.

12. **JOHNSTONE** was fired from NYPD after his felony conviction in 2007 for falsifying police records.

13. At all times relevant herein, defendant **JOHNSTONE** was acting as agent, servant and employee of defendant City of New York.

14. At all times relevant herein, the defendant was acting under color of state law.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

15. On September 30, 2004, at approximately 11:55 P.M. plaintiff was at Bayridge Parkway and 18 ave, Brooklyn, N.Y. when he arrived in a car. He began talking to a friend. In his sworn criminal complaint then officer **JOHNSTONE** claimed to have recovered crack-cocaine. JOHNSTONE CLAIMED **VELASQUEZ** allegedly participated with another apprehended in the commission of a felony sale of narcotics JOHNSTONE further claimed he recovered drugs from the ground where plaintiff threw it.. He was arrested and taken to Brooklyn Central Booking. This is where **VELASQUEZ first learned what he had been arrested for.**

16. In fact, **VELASQUEZ** was not in possession of any crack-cocaine or any other drugs; he did not make a sale of cocaine of any other drugs; he did not receive any money from the sale of crack-cocaine and he most certainly did not throw

drugs on the ground. In fact, all that **VELASQUEZ** had in his possession at the time of his arrest was his own personal money.

17. Upon information and belief, **JOHNSTONE** planted drugs and he conspired with other officers at the scene to file a false police report attesting that **VELASQUEZ** THREW crack-cocaine to the ground .

18. As a result of the forgoing, **VELASQUEZ** was falsely arrested and charged with both the criminal possession and the criminal sale of a controlled substance in the 3 & 4d degree, each a class b felony

19. As a result of the forgoing arrest, **VELASQUEZ** was held in custody and sent to Riker's Island Correctional Facility. While in prison, he was sexually assaulted two time

20. Upon Information and belief, **JOHNNSTONE** and the other officers at the scene were not only responsible for plating drugs on **VELASQUEZ** and filing a false police report in connection with his arrest, but he also mispresented evidence to prosecutors, failed to provide prosecutors with material evidence or information, and/or gave testimony to the grand jury that was knowingly false. JOHNSTONE had planted drugs on ther defendants ,acting in concert with two other corrupt officers, ARBEENY and BOWENS.

21. As a result of the false information presented to the grand jury, in or around 2004 **VELASQUEZ** was indicted on the aforementioned charges.

22. With knowledge that his arrest and indictment were based on false evidence and testimony, and in fear of a significant period of incarceration up to 9 ½ years, **VELASQUEZ** pleaded guilty to a reduced charge and was given a plea deal of one year to three years, determinate jail.

23. **VELASQUEZ** was a victim of systemic unconstitutional practices by the **NYPD** dating back to the time of the Mollen Commission Report in 1994. Facing Rockefeller era drug sentences in a system that invariably credited the accounts of officers over those of impoverished people, **VELASQUEZ** cut his losses and plead guilty in a plea deal procured by fraud, manufactured courtesy of **JOHNSTONE**.

24. Sometime around 2008, **JOHNSTONE** was indicated for falsifying police records and filing false documents.

25. News articles detailing other police officer, many of whom worked with **JOHNSTONE** revealed that these officers were convicted for planting drugs on innocent people, and that **NYPD** officers made false arrests to meet quotas and rake in overtime-which was commonplace within the department.

26. In fact, a former **NYPD** narcotics officer who worked in the same unit as **JOHNSTONE** testified that it was a common practice to fabricate drug charges against innocent people to make arrest quotas. The federal judge who presided over a police corruption trial even commented on the prevalence of this practice, stating the **NYPD** was plagued by "widespread falsification" by arresting officers (Weinstein).

27. Indeed, the pressure put on the **NYPD** officers to meet the arrest quotas was so widespread, that in August 2010, then-Gov. David Paterson signed legislation expanding protections for police officers under the state's anti-quota statute to ban retaliation against officers for not meeting quotas for tickets, summonses, arrests, and stop-and-frisk encounters. Previously, the quota law covered traffic violations.

28. Despite the 2010 legislation, a 2016 news article revealed allegations by **NYPD** officers that the **NYPD** was continuing to pursue illegal quotas and punishing officers who do not meet numerical goals. Subsequent reports revealed that these arrest quotas targeted minorities- specifically, members of the Black and Hispanic Communities, such as Plaintiff **VELASQUEZ**.

29. While VELASQUEZ received THREE YEARS PRISON TIME, JOHNSTONE received probation for his crimes.

30. According to a New York Times article of November 17, 2022, the Kings County District Attorney's office consented to the vacatur of numerous convictions that had relied upon 13 former police officers who had subsequently been convicted of crimes.

31. On OCTOBER 12,2022, the Supreme Court of the State of New York, Kings County, vacated Plaintiff's conviction, dismissing his indictment with prejudice.

32. Notably, **VELASQUEZ'S** conviction was not the only one vacated as a result of **JOHNSTONE'S** actions. As a result of the investigations of the NYPD and the Kings County, on September 7, 2022, the KCDAO announced that 378 convictions were to be vacated as a result of police officer misconduct, 100 of which were attributable to **JOHNSTONE**.

33. According to the newspaper articles, in 2021 and 2022 a total of 876 convictions -250 in the Bronx, 188 in Manhattan, 378 in Brooklyn, and 60 in Queens—were vacated upon consent of the District Attorneys because the convictions depended on the word of **NYPD** officers who had been convicted of crimes or otherwise discredited.

34. The acts complained of herein, and the vacatur of 876 convictions referenced in part are a direct and proximate result of a pattern, practice and custom of these corrupt police officers that became the way of doing police business. These practices were so widespread that they took on the force of law.

35. In addition, the failure of the **City of New York** and the **NYPD** to properly select, train, supervise, promote and discipline police officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

36. The official policies, practices and customs of the **City of New York** and the **NYPD**, alleged herein violated plaintiff's rights guaranteed by 42 USC § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States. Due Process of law was thrown out in order to circumvent constitutional rights.

37. The conduct towards plaintiff alleged in this lawsuit subjected plaintiff to trauma, shock, debasement, shame, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, suffering.

38. While in prison plaintiff had to resort to violence in order to defend himself from predatory gangs in Riker's Island. However, he succumbed to two brutal sexual assaults and needed to be placed in protective custody. VELASQUEZ served a total of

16 months in prison, along with another year of parole. He was severely traumatized and suffered severe emotional harm.

## CAUSES OF ACTION

## COUNT ONE

## 42 U.S.C. § 1981, 1983 FOURTH AND FOURTEENTH

## VIOLATIONS: MALICIOUS PROSECUTION

39. The plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

40. On or about September 30, 2004, the defendants initiated criminal proceedings against the plaintiff by misrepresenting and falsifying evidence in criminal court. P.O JOHNSTONE continued his lies by allowing the false information he provided either by himself or to his back-up police officers to be written on a Felony Complaint and or told in the grand jury in order to secure an indictment. P.O. JOHNSTONE misrepresented and falsified evidence that created a falsehood in the signing of the felony complaint and P.O JOHNSTONE'S lies were material for a finding of probable cause. In commencing and continuing the prosecution of plaintiff, to be falsely charged with acts in violation of the Penal law of State of New York, JOHNSTONE played a key material role.

41. In VELASQUEZ'S criminal case, JOHNSTONE, acting in his capacity as an undercover officer, alleged that he recovered crack-cocaine from the ground where he claimed VELASQUEZ threw it.

42. During the course of **VELASQUEZ'S** prosecution **JOHNSTONE** was regularly in touch with prosecutors regarding the facts and details of **VELASQUEZ'** criminal case.

43. Plaintiff did not give defendant **CITY**, it agents servants or employees, including then police officer **JOHNSTONE**, probable cause to believe that plaintiff had committed the falsely charged illegal acts. Although **VELASQUEZ** was indicted, the indictment was procured by fraud. **JOHNSTONE** misrepresented evidence used in the Grand Jury to indict**VELASQUEZ**.

44. In commencing and continuing the prosecution of plaintiff, defendants caused plaintiff to be falsely charged with acts in violation of the Penal law of the State of New York.

45. Plaintiff had not given defendant **CITY**, its agents, servants or employees, including then P.O. **JOHNSTONE** probable cause to believe that plaintiff had committed the falsely charged illegal acts. Probable cause was thus vitiated.

46. Furthermore, **VELASQUEZ**, upon information and belief, denies participating in any sale of narcotics to anyone on the date referenced in his felony complaint.

47. **VELASQUEZ** submits that he was hanging out at that with a friend, Carmine Decrescenze.

48. **VELASQUEZ** submits his only crime was associating with Decrescenze; nothing more. Mere presence at the scene of a crime, even with knowledge of that crime does not establish probable cause, much less guilt.

49. Sometime after his arrest onSeptember 30, 2004 **VELASQUEZ** was informed that if he went to trial, the information concerning **JOHNSTONE'S** observations as stated in his felony complaint would be used against him.

50. **VELASQUEZ** plead guilty to avoid a much long sentence knowing that**JOHNSTONE**, the undercover, would testify against him. **VELASQUEZ** was aware that **JOHNSTONE** in fact had falsely reported that **VELASQUEZ** was observed to have THROWN crack-cocaine which was material and likely to influence a jury's verdict. **JOHNSTONE** had also in fact forwarded this information to Brooklyn prosecutors. For the same reasoning detailed here that probable was vitiated due to fraud committed by **JOHNSTONE, VELASQUEZ'S** so-called admission at his allocation in Court is also nullified.

51. The defendants acted with malice because then P.O **JOHNSTONE** did not arrest Plaintiff with the desire to see the ends of justice served but rather with a false motive or planting and fabricating evidence and thus furthering his career and arrest quota.

52. As a result of the false evidence provided by defendants, Plaintiff was forced under threat of issuance of a warrant to defendant against false charges.

53. Plaintiff was deprived of his liberty by being incarcerated for 16 months.

54. The conduct of the defendants was the direct and proximate cause of Plaintiff's loss of liberty, which violated plaintiff's statutory rights guaranteed by laws and Constitution of New York and the United States.

55. On October 12, 2022 plaintiff's conviction was vacated and the indictment dismissed with prejudice pursuant to a Writ of Coram Nobis.

56. The defendants acted with malice because then P.O. **JOHNSTONE** did not arrest plaintiff with the desire to see the ends of justice served but rather with a false motive of planting and fabricating evidence.

57. As a result of the false evidence provided by defendants, plaintiff was forced under threat of issuance of a warrant to defend against false charges.

58. The conduct of the defendants was the direct and proximate cause of plaintiff's loss of liberty by completing 10 months of jail incarceration and violated plaintiff's statutory rights guaranteed by the laws and Constitution of New York and the United States.

## COUNT TWO

## 42 U.S.C §1981, 1983 AND THE FOURTEENTH AMENDMENT VIOLATIONS FOR FABRICATED EVIDENCE

59. Plaintiff repeats and reiterated the allegations contained in paragraphs "1"through "58" of the complaint as if fully set forth herein. On or about March 24, 2007 in the County of Kings, New York, **VELASQUEZ** was unlawfully detained arrested imprisoned by agents, servants, and/or employees of defendant, **CITY** including **PO JOHNSTONE**.

60. That the aforesaid arrest and imprisonment was malicious unlawfully and not based upon a warrant, probable cause, and or any exigent circumstances but by fabricated-evidence.

61. That defendant **CITY** through its agents, servants and/or employees, including police defendant's, P.O **JOHNSTONE** acted in bad faith and without probable cause; to wit, he lied about his observation of possession of crack-cocaine by **VELASQUEZ**.

62. That the aforesaid arrest and imprisonment was made with fabricated evidence as sworn to in the criminal complaint. The information **JOHNSTONE** forwarded to prosecutors formed the basis for **VELASQUEZ'S** prosecution and **VELASQUEZ** became aware that this fabricated evidence, if believed would likely influence a jury's verdict and convict **him**.

63. The aforesaid fabrication of evidence caused **VELASQUEZ** to suffer a deprivation of his liberty for 16 MONTHS.

64. By reason of the forgoing, the defendants became liable to **VELASQUEZ** in a sum of money which exceeds the jurisdiction limit of all courts of lesser jurisdiction.

## COUNT THREE

### AGAINST DEFENDANTS FOR VIOLATIONS OF 42 1983 AND THE FOURTEETH AMENDMENT AND VIOLATIONS FOR DENIAL OF DUE PROCESS OF LAW IN VIOLATION OF THE NEW YORK AND UNITED STATES CONSTITUTIONS.

65. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force.

66. It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by police officers. When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial.

67. The plaintiff and all these similarly situated are denied their right to a fair trial i.e., they were subjected to a deprivation of liberty without due process of law in violation of New

York and United States Constitution pursuant to the due process clause of the Fourteenth Amendment by the participation of JOHNSTONE.

68. **JOHNSTONE** created false information and provided that information to the District Attorneys which was then used in **VELASQUEZ'S prosecution.**

69. The defendant **JOHNSTONE** consciously lied in generating plaintiff's felony complaint.

70. A hearing was held in Brooklyn Supreme Court to review certain convictions to see if **JOHNSTONE** played a key role in bringing about those prosecutions.

71. Because **JOHNSTONE** was already thoroughly, investigated by The Brooklyn District Attorney's Office, as well as an internal investigation by the same police department worked for, and it was found, by unequivocal, substantiated evidence that JOHNSTONE lied and provided material false evidence in at least 100 documented cases. **JOHNSTONE'S** creditability was called into questions in cases he acted as the key police officer.

72. No independent evidence was found to have convicted these people, other than the word of **JOHNSTONE** and instead of investigating each case individually, the prosecutors conducted mass exonerations in only those cases **BOWNES** played a key role as an undercover policeman.

73. The hearing involved here was a Write of Error Coram Nobis to determine if the conviction was obtained in violation of a right of the defendant under the constitution of this state or of the United States.

74. VELASQUEZ had a defense attorney assigned to him or her and the BDAO was represented by their own assistant(s), who in turn investigated **JOHNSTONE**, the officer whose conduct was under review. Evidence was presented by both sides. Argument of Counsel was heard and the Judge after due deliberation decreed that all of the petitioners suffered substantiative defect and violation of a constitutional right guaranteed by the United States Constitution.

75. Defendants' action resulted in the plaintiff being arrested handcuffed, incarcerated, forced to appear in court, and endure the horror of being sentenced to jail.

76. By reason of the aforesaid, the plaintiff has been damaged, and they are entitled to compensatory damages in the sum to be determined by the Court.


## COUNT FOUR

## MUNICIPAL LIABILITY FOR

# CONSTITUTIONAL VIOLATIONS: MONELL CLAIM

77. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs "1" through "76" of this complaint. Prior to September 30, 2004 defendant **CITY** developed and maintained policies and customs which caused the deprivation of plaintiff's Constitutional Rights .Prior to March 24, 2007 the responsible policy making officials of defendants **CITY** knew, or in the exercise of reasonable care should have known, that individual police officers of the **CITY** hand engaged in a pattern of practice of illegal and unconstitutional conduct, including performing false arrests, malicious prosecutions and unconstitutional searches on arrestees.

78. Shortly after Plaintiff's arrest and prosecution, the new York State Bar Association's Task Force on Wrongful Convictions released a report, Final Report on Wrongful Convictions, dated April 4, 2009. The Task Force found that police failed to make reports of "information that was viewed by the detective as not aiding the investigation". The Task force observed that "[p]rosecutors access to evidence known to the police, depended ultimately on the willingness of the police to record, preserve, and reveal such evidence." And one of the recommendations by the Task Force as to police was the need for "Train[ing] and Supervis[ion] in the Application of Brady and Truthful Evidence Rules."

79. Police misconduct, manifested by a pattern and practice that was so widespread, that it took on the force of law, was primarily due to the enormous pressure Bowens and numerous other officers who worked with him (Arbeeny, Johnstone, Foder) were all under pressure to meet the arrest quotas in place.

80. A pattern and practice of police misconduct in the NYPD also extends to systemic violations of the right against unreasonable and unlawful searches and seizures under the Fourth Amendment to the US. Constitution. This dates back to the stop and frisk violations

that were put to apparent rest in Judge Shira Shindellin courtroom when these violations came to light.

81. Based on data published by Pro Publica covering CCRB instigations From September 1985 to January 2020, the CCRB substantiated misconduct finding against 1,374 NYPD officers who engaged in illegal searches, i.e Fourth Amendment violations, these officers not only kept their jobs – half of them were given promotions. For example:

    i. Two Inspectors engaged in illegal searches, one later became a chief and the other a deputy chief (100%);

    ii. Four Deputy Inspectors engaged in illegal searches, all four were later promoted (40%);

    iii. Ten Captains engaged in illegal searches, and four were later promoted (40%);

    iv. Forty-Six Lieutenants engaged in illegal searches, and twenty-three were also promoted.

    v. Two Hundred and Twenty Six Sergeants engaged in illegal searches, One Hundred Eleven were promoted (49%);

    vi. Seven Hundred Ninety Four police officers engaged in illegal searches, Three Hundred and Fifty Nine were later promoted (45%).

    vii. Of the Three Hundred-Nine police officers known to have violated the Fourth Amendment, the vast majority, Two Hundred Ninety-One, were promoted to detective – a promotion supposedly based entirely on merit.

    viii. These substantiated complaints represent the most extreme police misconduct, because CCRB only substantiates complaints when the misconduct is virtually undeniable. Therefore, the 1,374 instances of misconduct listed above de not represent all of the

allegations of illegal searches which were investigated; rather, they represent only the most severe instances of misconduct, which were proven by substantial evidence.

ix. In 2019, Eastern District of New York Judge Raymond J. Dearie reviewed multiple unsubstantiated CCRB closing reports and found that:

(1) Investigators systematically use to credit testimony by civilian witnesses with regards to use of force yet routinely credit uncorroborated statements by the officers. Investigators decline to substantiate allegations ,even when they find them to be plausible, whenever the officers deny the offending conduct.

(2) In one-on-one confrontations between an officer and an individual, the standoff is always resolved In favor of the officer. (3) Investigators reach conclusions that defy common sense and do not logically flow from the investigation's factual record. (4) The depth of investigation conducted doses not match the gravity of the allegations (5) Investigators do not consider the officer's complaint history to identify patterns in the officer's behavior.

82. On November 15, 2020, the New York Times reported that out of 6,900 of the misconduct charges recommended for sanctions by the CCRB the **NYPD** leadership reduced the recommended penalty in 71 percent of the cases. By far the most common penalty actually was a loss od vacation days.

83.No matter what the misconduct, **NYPD** officers almost never lose their jobs. There are approximately 36,000 NYPD Officers The CCRB has investigated more than

48,000 officers over the last several decades, according to data released last year. As of 2020, only nine officers have ben terminated following a finding of misconduct.

83. Even in particularly egregious cases, the **NYPD** refuses to effectively discipline officers.

84. For example, David "Bullethead" Grieco has been the subject of almost three dozen lawsuits and numerous incidents of misconduct, almost all violations of the Fourth Amendment. In one 2020 case, the litigants allege the Grieco and a group officers "forcefully entered: the Plaintiffs' apartment without consent, arrested its occupants—including a paraplegic man who was subjected to excessive force – and unlawfully searched each apartment in the home. On a separate occasion Grieco burst into a home without a warrant and detained six-year-old twins, who he then transported to the precinct.

85. Nonetheless, Grieco was promoted to sergeant in 2018 after making over $190,000 in fiscal year 2017. The City has paid over $600,000 in settlements arising from Grieco" unlawful tactics, yet the NYPD continues to allow Grieco to remain on the force with almost no oversight or discipline.

86. But, as if this statistical data was not enough **JOHNSTONE**, the police officer who is the subject of this lawsuit had numerous complaints and allegations of police misconduct filed against him. Not one was substantiated. This proved what to toothless tiger the CCRB turned out to be.

87. These patterns of unlawful searches and seizures are present at every level of the **NYPD** command, demonstrating that (1) the culture and policies of the **NYPD** have long failed to protect the Fourth Amendment rights of New Yorkers; and (2)

officers who have substantiated complaints regarding violations of the Fourth Amendment have no trouble climbing to the highest ranks if the department, further perpetuating these unconstitutional practices.

88. For example, while holding the rank of Commanding Officer of the 44th Precinct, then Inspector Brian Mullen unlawfully ordered the false arrest of adult male and fifteen-year-old minor son inside a hospital where they were visiting an ailing family member. The minor son was victim of an attempted robbery in the waiting area of the hospital, which triggered the police response. Rather than investigate the crime committed against the teen, Mullen and his officers employed excessive force and arrested the boy and his father. This Fourth Amendment violation was eventually substantiated by the CCRBM who recommended disciplinary action. The NYPD declined to discipline Mullen at all.

89. Chief-of-Crime Control Strategies, Michael Liperti's multiple CCRB complaints include a substantiated complaint from 2015 in which Liperti, an Inspector at the time, four other officers, barged into a man's home unannounced at 5:00 a.m. where the man and his family members including two children , were sleeping, Not only was the entry itself unlawful. But the officers also broke into the wrong home. No one bearing the name on the arrest warrant lived in or was present in the apartment, Although CCRB recommended "formalized training:, Liperti only received "instructions" for the violation, the lenient response.

90. Before Chief of Department Rodney Harrison was promoted, he was a sergeant at the 83rd Precinct in Brooklyn when he and a group of officers illegally entered the apartment of a mother and her five children with their weapons dawn, calming that

they were searching for the children's father. The CCRB recommended departmental changes, but the NYPD imposed command discipline —which almost always amounts to only a loss of vacation days.

91. Even NYPD police Commissioner Dermot F. Shea has a least one sustained CCRB complaint for violations of the Fourth Amendment on his record which included an illegal vehicle stop., illegal search of persons, and illegal search of a car. When the CCRB recommended charges, the **NYPD** instead ordered that Shea and the other involved officer undergo departmental "instructions".

92. Because of practices and de facto polices maintained by the City of New York the Individual Defendants had every reason to believe they would not receive any meaningful punishment for gross misconduct and lying about it, nor did they have reason to believe that gross misconduct in the course of their duties would in any way impair their chances if being promoted of continuing on a lengthy and decorated career in the department.

93. One thing is clear: the City of New York abdicated its responsibility to the public by turning a blind eye to police officers fabricating evidence, wrongfully convicting people, withholding, Brady material, engaging in unreasonable and unlawful searches and seizures, and lying. Indeed, it encouraged this behavior by failing to train and supervise officers, and by failing to discipline wrongdoers. In fact, it promoted miscreants, put them in supervisory positions, and created a culture in the **NYPD** where wrongdoing and coverups are acceptable customs and practices.

94. As a result of these unconstitutional policies and practices, Plaintiffs were deprived of their constitutional rights and the City of New York is liable under *Monell* for damages caused by the Individual Defendants.

## DAMAGES

95. As a direct and proximate result of the said acts of the defendant, MIGUEL VELASQUEZ suffered the following injuries and damages:

   a. Violation of his rights under the Fourth and Fourteenth Amendments to the Constitution;

   b. Loss of physical liberty due to incarceration;

   c. Further restriction of his liberty due to forced court appearance and parole;

   d. Humiliation, embarrassment, injury to reputation, sexual abuse;

   e. Extreme emotional distress;

   f. Severe disruption of family.

Wherefore, plaintiff request the following relief as against all of the defendants:

1. Award compensatory damages in an amount to be determine by the Court..

2. Award attorneys' fees as fair and seasonable compensation for services rendered in connection with this action;

3. For such other and further relief as to this Court may deem just and proper.

Dated: March 3,2025
Bronx, New York

Respectfully submitted.

Rudy Velez
930 Grand Concourse Suite 1A
Bronx, New York 10451
(917) 674-0572
rvesq@yahoo.com
Attorney for PLAINTIFF